QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (State Bar No. 96737)
    claudestern@quinnemanuel.com
  Evette D. Pennypacker (State Bar No. 203515)
    evettepennypacker@quinnemanuel.com
  Bobbie N. Eftekar (State Bar No. 240102)
    bobbieeftekar@quinnemanuel.com
  555 Twin Dolphin Drive, Suite 560
  Redwood Shores, California 94065-2139
  Telephone:    (650) 801-5000
  Facsimile:    (650) 801-5100

  Mark D. Baker (admitted *pro hac vice*)
    markbaker@quinnemanuel.com
  51 Madison Avenue, 22nd Floor
  New York, New York 10010
  Telephone:    (212) 849-7000
  Facsimile:    (212) 849-7100

Attorneys for Plaintiff
Symyx Technologies, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYMYX TECHNOLOGIES, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>ACCELERGY CORPORATION, a Delaware Corporation, YOUQI WANG, PEIJUN CONG, and YUMIN LIU,<br><br>        Defendants. | CASE NO. C0704050RS<br><br>**SYMYX TECHNOLOGIES, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................................1

II.   STATEMENT OF FACTS ................................................................................1

    A.    The Parties .............................................................................................1

    B.    Symyx Creates the HTE Industry .........................................................2

    C.    The Individual Defendants Use Symyx's Resources During Their Symyx Employment To Help Form Accelergy .................................................2

    D.    Accelergy Competes With Symyx and Infringes Symyx's Patent ............3

    E.    Symyx's Lawsuit ...................................................................................3

III.  ARGUMENT ..................................................................................................4

    A.    This Court Has Subject Matter Jurisdiction Over Symyx's State Law Claims ....................................................................................................4

        1.    All of Symyx's Claims Arise From a Common Set of Facts ........4

        2.    There Is No Reason Under 28 U.S.C. § 1367(c) For the Court to Decline to Exercise Supplemental Jurisdiction .............................8

    B.    Defendants' Motion For a More Definite Statement Should Be Denied ................10

        1.    Defendants' Motion Is Inconsistent With Rule 12(e), and Seeks Information That Is Ascertainable During Discovery ................10

        2.    Symyx's Allegations Satisfy Rule 8's Liberal Pleading Requirements ............................................................................10

        3.    Symyx's Amended Complaint Sets a Reasonable Scope For Discovery .................................................................................17

IV.   CONCLUSION ............................................................................................18

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

# TABLE OF AUTHORITIES

**Page**

## CASES

*3D Sys., Inc. v. Aarotech Labs, Inc.*,
    160 F.3d 1373 (Fed. Cir. 1998) ............................................................................ 5

*Allen v. County of Monterey*,
    No. C-06-07293, 2007 WL 3070973 (N.D. Cal. Oct. 19, 2007) ................................ *passim*

*Aqua-Lung America, Inc. v. American Underwater Prods., Inc.*,
    No. C 07-2346, 2007 WL 3169050 (N.D. Cal. Oct. 29, 2007) (Seeborg, J.) ..................... 5-6

*Bancroft-Whitney Co. v. Ada Glen*,
    411 P.2d 921 (Cal. 1966) ................................................................................ 13

*Bell Atlantic Corp. v. Twombly*,
    127 S.Ct. 1955 (2007) ................................................................................... 11

*Chimie v. PPG Industries Inc.*,
    402 F.3d 1371 (Fed. Cir. 2005) ........................................................................... 7

*Clark v. Allstate Ins. Co.*,
    106 F. Supp. 2d 1016 (S.D. Cal. 2000) ................................................................ 16

*Cont'l Car-Na-Var Corp. v. Moseley*,
    24 Cal. 2d 104, 107 (1944) ............................................................................. 14

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ........................................................................... 16

*CRST Van Expedited, Inc. v. Werner Enter., Inc.*,
    479 F.3d 1099 (9th Cir. 2007) .......................................................................... 15

*Executive Software v. U.S. Dist. Court for Cent. Dist. of California*,
    24 F.3d 1545 (9th Cir. 1994) .................................................................... 4, 8, 10

*Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940 (E.D. Cal. 1981) ................... 15

*Fowler v. Varian Assocs., Inc.*,
    196 Cal. App. 3d 34 (Cal. Ct. App. 1988) ............................................................. 13

*Fox v. iVillage*,
    Case No. C-05-3327 SC, 2005 WL 3157413 (N.D. Cal. Nov. 23, 2005) ........................... 6

*GlenFed Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ........................................................................... 14

*Hollingsworth Solderless Terminal Co. v. Turley*,
    622 F.2d 1324 (9th Cir. 1980) .......................................................................... 14

-ii-

*Hsu v. Oz Optics Ltd.,*
      211 F.R.D. 615 (N.D. Cal. 2002) (Seeborg, J.) ............................................................... 13-14

*Huong Que, Inc. v. Luu,*
      150 Cal. App. 4th 400 (Cal. Ct. App. 2007) ........................................................................ 13

*Khoury v. Maly's of California, Inc.,*
      14 Cal. App. 4th 612 (Cal. Ct. App. 1993) .......................................................................... 15

*Leather's Best, Inc. v. S.S. Mormaclynx,*
      451 F.2d 800 (2d. Cir. 1971) ............................................................................................... 11

*LiveOps, Inc. v. Teleo, Inc.,*
      No. C05-03773, 2006 WL 83058 (N.D. Cal. Jan. 9, 2006) ........................................ 5, 6, 8

*Matthews Paint Co. v. Seaside Paint and Lacquer Co.,*
      148 Cal. App. 2d 168 (Cal. Ct. App. 1957) ......................................................................... 14

*McNerny v. Nebraska Public Power Dist.,*
      309 F. Supp. 2d 1109 (D. Neb. 2004) .................................................................................. 12

*Moulton v. AmeriCredit Fin. Serv., Inc.,*
      No. C 04-02485, 2005 WL 1522237 (N.D. Cal. June 28, 2005) ................................... 10, 14

*Multimedia Patent Trust v. Microsoft Corp.,* 525 F. Supp. 2d 1200 (S.D. Cal. 2007) .................. 15

*NL Indus., Inc. v. Kaplan,*
      792 F.2d 896 (9th Cir. 1986) ................................................................................................. 4

*Oculus Innovative Sci., Inc. v. Nofil Corp.,* No. C 06-01686 SI, 2007 WL 2600746 (N.D.
      Cal. Sept. 10, 2007) ............................................................................................................. 14

*Sagana v. Tenorio,*
      384 F.3d 731 (9th Cir. 2004) ............................................................................................... 11

*Swierkiewicz v. Sorema,*
      534 U.S. 506 (2002) (Rule 8(a)) ..................................................................................... 13, 14

*Taiwan Semiconductor Manuf. Co., Ltd. v. Semiconductor Manuf. Int'l Corp.,*
      2004 WL 5212448 (N.D. Cal. 2004) ..................................................................................... 9

*United States v. Maxxam Inc.,*
      No. C 06-7497, 2007 WL 2781169 (N.D. Cal. Sept. 20, 2007) ........................................... 17

*Verdegall Bros., Inc. v. Union Oil Co. of Cal.,* 750 F.2d 947 (Fed. Cir. 1984) ............................... 6

*Vess v. Ciba-Geigy Corp. USA,*
      317 F.3d 1097 (9th Cir. 2003) .............................................................................................. 17

*Whiteway v. Fedex Kinko's Office and Print Serv., Inc.,*
      No. C05-2320, 2005 WL 3095864 (N.D. Cal. Nov. 14, 2005) ....................................... 10, 17

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

1

## **STATUTES**

2    28 U.S.C. § 1331 ................................................................................................... 4

3    28 U.S.C. § 1338 ............................................................................................... 4, 6

4    28 U.S.C. § 1367 ............................................................................................ *passim*

5    Cal. Labor Code § 2860 .................................................................................... 12

6    Cal. Labor Code § 2863 .................................................................................... 12

7

8

## **RULES**

9    Fed. R. Civ. Pro. 8 ......................................................................................... *passim*

10   Fed. R. Civ. Pro. 9 ........................................................................................... 17

11   Fed. R. Civ. Pro. 10 ......................................................................................... 15

12   Fed. R. Civ. Pro. 12 ......................................................................................... 10

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

1 | **I.    INTRODUCTION**

2    Defendants' motion to dismiss or for a more definite statement should be denied.  There is

3 no dispute that this Court has jurisdiction over Symyx's patent infringement claim.  For this Court

4 to exercise supplemental jurisdiction over Symyx's state law claims, those state law claims must

5 be part of the same case or controversy giving rise to Symyx's patent infringement claim.  Under

6 the relevant standard, even a loose connection between the facts of Symyx's state and federal

7 claims is sufficient to support supplemental jurisdiction.  Symyx's First Amended Complaint

8 unequivocally meets this standard.  Symyx's state and federal claims arise from Defendants'

9 unauthorized exploitation of Symyx's resources to form Accelergy to directly compete with

10 Symyx in the HTE field.  This conduct led to Accelergy's infringement of Symyx's patent, the

11 application for which was pending and being prosecuted during the same time that the individual

12 defendants were employed by Symyx and using Symyx's resources to form Accelergy.  It would

13 be inefficient, and a waste of judicial resources, to make the parties explain the complex HTE

14 technology, the HTE market, and how Accelergy came to possess Symyx's technology through

15 the improper activities of three former Symyx employees to two different judges and juries.

16 Defendants' motion to dismiss should be denied.

17    Defendants' request for a more definite statement should also be denied.  Accelergy and

18 the individual defendants know exactly what they are being accused of:  they used Symyx's

19 resources to form a company to directly compete with Symyx, they breached and/or interfered

20 with the contracts between Symyx and the individual defendants to do so, and their efforts led to

21 Accelergy's infringement of Symyx's patent.  Symyx's First Amended Complaint provides the

22 Defendants with fair notice of its claims and satisfies the liberal pleading requirements of Rule 8.

23 Defendants' motion for a more definite statement should also be denied.

24 | **II.    STATEMENT OF FACTS**

25 | **A.    The Parties**

26    Symyx is a Delaware corporation with its principal place of business in Santa Clara,

27 California.  (FAC ¶ 1)  Symyx developed and applies high throughput experimentation ("HTE") –

28 technology used to develop advanced materials.  (*Id.*)  Symyx performs research for customers

-1-

1   using proprietary technologies such as HTE to discover new and innovative materials. (*Id.*)

2   Symyx also designs, builds and sells automated research equipment and associated software. (*Id.*)

3   Materials discovered using Symyx's research techniques have been commercialized in a wide

4   variety of applications, including, for example, catalysts for the energy industry. (*Id.*)

5          Accelergy is a Delaware corporation with its principal place of business in Palo Alto,

6   California. (*Id.* at ¶ 2)  Like Symyx, Accelergy is a materials development company that

7   formulates advanced materials for the energy industry using HTE. (*Id.* at ¶ 17)  As a result,

8   Accelergy and Symyx are competitors in the field of HTE. (*Id.*)

9          **B.    Symyx Creates the HTE Industry**

10          Symyx's U.S. Patent No. 7,216,113 ("the '113 patent"), describes high-throughput

11   technologies as "techniques . . . useful for the simultaneous . . . (i) synthesis, (ii) processing,

12   (iii) analysis, or (iv) characterization of multiple compounds . . . ." (*Id.* at Ex. 1 ('113 patent), 9:2-

13   7)  According to the '113 patent, the use of HTE "improves the effectiveness of R&D," because it

14   "enable[s] the execution of 100 to 10,000 more experiments per unit time compared to traditional

15   research approaches." (*Id.* at 1:38-42)  Symyx became an industry leader in HTE during the time

16   it employed individual defendants Youqi Wang, Peijun Cong and Yumin Liu.  (FAC at ¶ 15)

17   Wang, Cong and Liu's work at Symyx, such as the design and development of new hardware and

18   methods for HTE, have, in some measure, contributed to Symyx's success. (*Id.*)  Of course, the

19   fruits of this success belong to Symyx alone.

20          **C.    The Individual Defendants Use Symyx's Resources During Their Symyx**
              **Employment To Help Form Accelergy**
21

22          Wang, Cong and Liu each entered into Confidential Information, Secrecy, and Invention

23   Agreements with Symyx. (*Id.* at ¶¶ 15, 24, 36, 48)  In the agreements, Wang, Cong and Liu

24   promised, *inter alia*, not to engage in any business activity that directly or indirectly competes

25   with Symyx's business. (*Id.*)  Despite these agreements, during their employment by Symyx,

26   Wang, Cong and Liu secretly formed Accelergy to compete with Symyx in the HTE industry. (*Id.*

27   at ¶ 16)  They helped to create a business plan for Accelergy, they used Symyx's information,

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

1    data, equipment and employees to help form Accelergy, and they otherwise worked for Accelergy

2    while they were still employed by Symyx.  (*Id.*)

3        The application for the '113 patent was pending and being prosecuted at the United States

4    Patent and Trademark Office before September 2003 while Wang, Cong and Liu were still Symyx

5    employees.  (*Id.* at Ex. 1)  In particular, Symyx filed the provisional and regular patent

6    applications for the '113 patent on March 24, 2000 and March 26, 2001, respectively.  (*Id.*)  The

7    '113 patent issued on May 8, 2007.  (*Id.*)

8        **D.    Accelergy Competes With Symyx and Infringes Symyx's Patent**

9        According to its Abstract, the '113 patent relates to, *inter alia*, methods of performing

10    HTE.  (*Id.*)  Such methods enable "individual chemists to design, order, and obtain data for

11    multiple experiments or measurements in a timely and cost-effective manner."  (*Id.*)  Accelergy

12    uses research processes based on HTE to compete with Symyx in the design of advanced

13    materials.  (FAC ¶ 3)  Not surprisingly, Accelergy's past and present activities directly and

14    indirectly infringe the '113 patent.  (*Id.* at ¶ 17)  Accelergy has also been knowingly and

15    intentionally inducing others to infringe the '113 patent, and has been contributorily infringing the

16    '113 patent.  (*Id.* at ¶ 20)[1]

17        **E.    Symyx's Lawsuit**

18        Symyx's Amended Complaint contains ten federal and state claims that all relate to the

19    Defendants' use of Symyx's resources to form a competing company in the HTE industry.  Claim

20    1, against Accelergy, is for infringement of Symyx's '113 patent concerning HTE.  Claims 2-7 are

21    claims for breach of contract and breach of duty of loyalty against each of the three individual

22    defendants.  These claims also relate to the individual defendants' use of Symyx's resources and

23    business information to help form a competing company.  (*Id.* at ¶¶ 27, 32, 39, 44, 51, 56)

24

25    _____

26    [1]  If permitted leave to do so, Symyx will add claims of inducing infringement of the '113 patent
      against at least Wang, and, if the facts disclosed in the course of discovery warrant, against Cong
27    and Liu as well.

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

1    Claim 8, for intentional interference with contract, also relates to Accelergy's competition

2    with Symyx in the HTE field.  It involves Defendants' interference with the individual defendants'

3    contractual promises not to engage in any activities that compete with Symyx.  (*Id.* at ¶ 62)

4    Claims 9 and 10, for statutory and common law unfair competition against all Defendants, also

5    concern Accelergy's competition with Symyx because they incorporate by reference the other

6    allegations in the Amended Complaint.  (*Id.* at ¶¶ 67, 72)

7    **III.    ARGUMENT[2]**

8       A.    **This Court Has Subject Matter Jurisdiction Over Symyx's State Law Claims**

9          1.    **All of Symyx's Claims Arise From a Common Set of Facts**

10    Accelergy argues that "[t]he gravaman of Symyx's Amended Complaint is an employment

11    dispute governed by state law."  (Mot. at 3)  This is just plain wrong.  Symyx's complaint

12    concerns the improper use of its business information and technology — first to start Accelergy

13    and which led to Accelergy infringing Symyx's '113 patent.  It is undisputed that this Court has

14    subject matter jurisdiction over Symyx's patent infringement claim because it raises a federal

15    question.  *See* 28 U.S.C. §§ 1331, 1338(a).  As a result, the Court has supplemental jurisdiction

16    "over all other claims that are so related to the [patent claim] . . . that they form part of the same

17    case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

18    While Accelergy appears to recite the relevant test for supplemental jurisdiction, it completely

19    misapplies it.  The test is not whether all the claims require the same elements of proof (this would

20    make the claims redundant).  The test here for whether Symyx's state law claims are

21    "supplemental" to Symyx's patent infringement claim is whether one "would ordinarily be

22    expected to try them all in one judicial proceeding."  *Executive Software v. U.S. Dist. Court for*

23    *Cent. Dist. of California*, 24 F.3d 1545, 1552 (9th Cir. 1994).  "In general, a 'loose factual

24    connection' between the claims suffices for the claims to be considered one 'case' under Article

25    III."  *Allen v. County of Monterey*, No. C-06-07293, 2007 WL 3070973, at *4 (N.D. Cal. Oct. 19,

26

27    [2]  For purposes of Defendants' motion, the Court should accept all of Symyx's allegations as true.
      *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

28

-4-

1  2007) (citation omitted). "The touchstone of whether there is a 'common nucleus' between two

2  claims . . . is whether a plaintiff would be expected to try the two claims together." *Allen*, 2007

3  WL 3070973, at *5.

4       That is plainly the case here. Symyx's state law and federal patent claims all arise from the

5  individual defendants' and Accelergy's improper use of Symyx's resources and technology.

6  Wang, Cong and Liu improperly used Symyx's resources during their employment to help form a

7  competing company — Accelergy — in the HTE industry. In turn, Accelergy — the company

8  that Wang, Cong and Liu improperly formed — has been and now continues to infringe at least

9  one of Symyx's patents directed to the HTE field. Defendants' improper use of Symyx's

10  information precipitated Accelergy's infringement of the '113 patent. (*See, e.g.*, FAC at ¶ 17)

11  Indeed, if Wang, Cong and Liu had not improperly used Symyx's resources to help form

12  Accelergy, the '113 patent would never have been infringed. The factual circumstances

13  surrounding the formation of Accelergy and its later infringement of the '113 patent are

14  inexplicably intertwined. To explain how Accelergy came to infringe its patent, Symyx will

15  invariably explain the events leading up to Accelergy's formation — the very events that form the

16  basis of Symyx's state law claims.

17       In fact, "it is quite common for courts to see in the same proceeding, intellectual property

18  infringement claims alongside state claims for unfair competition and misappropriation of trade

19  secrets." *LiveOps, Inc. v. Teleo, Inc.*, No. C05-03773, 2006 WL 83058, at *3 (N.D. Cal. Jan. 9,

20  2006) (collecting cases). And, courts regularly exercise supplemental jurisdiction in patent cases,

21  including cases that involve the same state law claims at issue here. *See, e.g.*, *3D Sys., Inc. v.*

22  *Aarotech Labs, Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) (affirming exercise of supplemental

23  jurisdiction over unfair competition claim because the claim arose out of the accused infringer's

24  sales activities); *Aqua-Lung America, Inc. v. American Underwater Prods., Inc.*, No. C 07-2346,

25  2007 WL 3169050 (N.D. Cal. Oct. 29, 2007) (Seeborg, J.) (finding supplemental jurisdiction over

26  misappropriation and fraud claims because they arose from the same facts as the patent

27  infringement claim).

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

1    The facts in *LiveOps* and *Aqua-Lung* are similar to the facts here.  In *LiveOps*, a claim for

2    copyright infringement involved the defendant's misappropriation of information during his

3    employment, and use of that information in the products of a competing company that he later

4    founded.  2006 WL 83058, at *3.  The court held that the plaintiff's state law claims – including

5    its claims for unfair competition, breach of contract and breach of fiduciary duty – were related to

6    the federal copyright claim because they "revolve[d] around the alleged unauthorized use of

7    Plaintiff's proprietary information during [the defendant's] employment [by the plaintiff]."  *Id.*  In

8    *Aqua-Lung*, the state claims for trade secret misappropriation and fraud involved the development

9    of infringing products using the patent owner's proprietary information.  2007 WL 3169050, at *1.

10   This Court held that these claims were sufficiently related to the patent infringement claims

11   because they "arise from the same nucleus of operative facts."  *Id.*

12   For the same reasons, supplemental jurisdiction exists in this case.  Like *LiveOps*, Symyx's

13   state claims relate to the individual defendants' use of Symyx's resources to help form a

14   competing company while they were still employed by Symyx.  The infringement claims here and

15   in *LiveOps* and *Aqua-Lung* also relate to infringing products and services the development of

16   which was aided by the improper use of proprietary information.[3]

17   Accelergy argues that Symyx's state claims are unrelated to Symyx's patent claim because

18   the events giving rise to the state law claims did not occur at the same time as the facts related to

19   the patent claim.  (Mot. at 5-6)  This is not correct.  The provisional and regular applications for

20   the '113 patent were pending and being prosecuted during the same time Wang, Cong and Liu

21   were still employed by Symyx and using Symyx's information to improperly create Accelergy to

22

23   [3]  Neither of the cases cited by the Defendants contradict Symyx's position.  *See Verdegall Bros.,*
     *Inc. v. Union Oil Co. of Cal.*, 750 F.2d 947, 949 (Fed. Cir. 1984); *Fox v. iVillage*, Case No. C-05-
24   3327 SC, 2005 WL 3157413 (N.D. Cal. Nov. 23, 2005).  *Verdegall* involved supplemental
     jurisdiction under 28 U.S.C. § 1338(b), which is different from the supplemental jurisdiction
25   statute at issue here (28 U.S.C. § 1367).  750 F.2d at 949.  In fact, *Verdegall* was decided six
     years before section 1367 was enacted and is therefore inapplicable here.  *See Executive Software,*
26   24 F.3d at 1555 (noting that section 1367 was enacted in 1990).  *Fox* is also inapposite because the
     dismissal of the state claims resulted from the court's lack of jurisdiction over the federal claims.
27   2005 WL 3157413, at *4.  Here, it is undisputed that this Court has jurisdiction over Symyx's
     patent claim.

28

-6-

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

1  compete with Symyx. Accelergy's activities before the '113 patent issued are also potentially

2  relevant to infringement. *See Chimie v. PPG Industries Inc.*, 402 F.3d 1371, 1382 (Fed. Cir.

3  2005) (holding that test results about a pre-patent model of the accused product were probative of

4  whether a later model infringed, because "evidence regarding pre-issuance activities may be

5  relevant to establishing that post-issuance products constitute infringement."). Thus, there is

6  significant temporal overlap between Symyx's state law and patent claims.

7          Even if some of the events giving rise to Symyx's claims did not occur at the same time,

8  however, supplemental jurisdiction is still proper here. *See Allen*, 2007 WL 3070973, at *5. In

9  *Allen*, for example, the court found supplemental jurisdiction over wrongful death claims under

10  state law and federal claims arising from the removal of children into foster care even though the

11  events giving rise to the wrongful death claims did not occur until years after the children were

12  removed into foster care. *Id.* The court reasoned that the removal of the children, which gave rise

13  to federal claims, while temporally distinct from the state wrongful death claims, was an integral

14  part of what led to the wrongful death claims and supplemental jurisdiction was therefore properly

15  exercised. *Id.* Similarly, here, the events leading to the formation of Accelergy in breach and

16  interference of the individuals' contracts with Symyx and the individual defendants' duty of

17  loyalty also lead to Accelergy's infringement of the '113 patent. Supplemental jurisdiction is

18  proper.

19          Common facts and evidence also demonstrate that Symyx's state law and patent claims are

20  sufficiently related to support supplemental jurisdiction. The claims all involve an understanding

21  of HTE technology, the HTE industry and market, and the nature of Symyx's and Accelergy's

22  respective businesses. Wang, Cong and Liu, who worked at Symyx while the '113 patent

23  provisional and regular patent applications were pending and who used Symyx's information to

24  start Accelergy, would be witnesses for the patent claim even if no state law claims were pending.

25  Hearing all of these claims together is not only proper under the relevant case law, it is efficient

26  for the Court and the jury.

27

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

1

2    **2.    There Is No Reason Under 28 U.S.C. § 1367(c) For the Court to Decline to Exercise Supplemental Jurisdiction**

3    Because all of Symyx's claims arise from a common set of facts, the Court "can decline to

4    assert supplemental jurisdiction . . . *only if* one of the four categories specifically enumerated in

5    section 1367(c) applies." *Executive Software*, 24 F.3d at 1555-56 (emphasis added); *see also*

6    *Allen*, 2007 WL 3070973, at *5.  None of the four categories in 28 U.S.C. § 1367(c)(1)-(4) apply

7    here, and the Court should exercise supplemental jurisdiction.

8    The first category under Section 1367(c)(1) relates to claims that raise a "novel or complex

9    issue of State law." 28 U.S.C. § 1367(c)(1).  Accelergy does not (and cannot) argue that this

10   factor is present here, because Symyx's state claims do not raise any new or complex issues of

11   state law.  The second category under section 1367(c)(3) is inapplicable.  That section only applies

12   when a "district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.

13   § 1367(c)(3).  Here, the parties agree that the Court has jurisdiction over Symyx's patent claim.

14   This third category, under Section 1367(c)(2), allows a Court to decline jurisdiction if the

15   state claims "substantially predominate" over the claims that the Court has original jurisdiction.

16   28 U.S.C. § 1367(c)(2).  Accelergy argues that this factor is present here because Symyx has nine

17   state claims and just one federal claim. (Mot. at 7)  But the mere fact that Symyx's state law

18   claims outnumber the patent claim is irrelevant. *LiveOps*, 2006 WL 83058, at *4 ("the mere fact

19   that a plaintiff's state claims outnumber his federal claims, without more, is insufficient to satisfy

20   the 'substantially predominate' standard.").  "Non-federal claims only 'substantially predominate'

21   where litigating them in federal court 'can accurately be described as allowing a federal tail to wag

22   what is in substance a state dog.'" *Allen*, 2007 WL 3070937, at *5 (internal citations omitted).

23   Here, all of Symyx's claims share a common factual background – Wang, Cong and Liu's

24   improper use of Symyx's resources to help form a competing company that infringes Symyx's

25   patent.  As a result, Symyx's state law claims cannot predominate over the federal claim. *See id.*

26   at *6 (finding no substantial predomination by state claims that shared a common factual

27   background with the federal claims).

28

-8-

1    Accelergy claims the facts here are similar to *Taiwan Semiconductor Manuf. Co., Ltd. v.*

2  *Semiconductor Manuf. Int'l Corp.*, 2004 WL 5212448 (N.D. Cal. 2004).  That is not the case.

3  There, the court refused to exercise supplemental jurisdiction because the plaintiff's trade secret

4  misappropriation claims substantially predominated over the patent claims.  2004 WL 5212448, at

5  *7.  The plaintiff's patent claims concerned the infringement of five discrete patents in the

6  semiconductor manufacturing field, and its state claims concerned "exceptionally broad"

7  allegations that the defendants stole a "multitude" of technical, operational, and business trade

8  secrets.  *Id.*  The scope of the alleged theft in *Taiwan Semiconductor* was so great that the plaintiff

9  stated it "dwarfs by far any case previously brought in this District." *Id.*

10    Unlike the plaintiff in *Taiwan Semiconductor*, Symyx is not asserting a trade secret

11  misappropriation claim.[4]  And, none of the state claims contain wide-ranging allegations such as

12  those in *Taiwan Semiconductor*.  Symyx's state claims are relatively ordinary contract,

13  employment, and unfair competition claims related to Wang, Cong, and Liu's wrongful use of

14  Symyx's business information to form a competing company — Accelergy.  Unlike in *Taiwan*

15  *Semiconductor*, the evidence related to Symyx's state claims does not substantially outweigh the

16  evidence related to Accelergy's patent infringement.  In fact, here, the evidence substantially

17  overlaps, since HTE technology, the HTE market and industry, and Wang, Cong and Liu's role in

18  helping Symyx to become a leader in the HTE industry are relevant to all of Symyx's asserted

19  claims.  Symyx's state law claims do not substantially predominate over the patent claims, and

20  Defendants' motion should be denied.

21    The fourth category under Section 1367(c)(4), which covers "exceptional circumstances"

22  when "there are other compelling reasons for declining jurisdiction," is also plainly inapplicable.

23  28 U.S.C. § 1367(c)(4).  Accelergy has not demonstrated that Symyx's state law claims will be

24  exceptionally confusing to a jury.  Indeed, it would be easier and more efficient to teach one jury

25  and one court about the complex technology at issue in this case, rather than do so twice.  Thus,

26

27  [4]  If the facts disclosed in the course of discovery warrant amending the complaint to add a trade
secret misappropriation claim, Symyx would have every right to do so.

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

1    this is not one of the "quite unusual" situations when Section 1367(c)(4) applies. *See Executive*

2    *Software*, 24 F.3d at 1557-58 ("the bases for declining jurisdiction should be extended beyond the

3    circumstances identified in subsections (c)(1)-(c)(3) only if the circumstances are quite unusual.").

4        None of the four categories under section 1367 applies to the facts of this case, and the

5    Defendants' request that this Court decline to exercise supplemental jurisdiction should be denied.

6    **B.    Defendants' Motion For a More Definite Statement Should Be Denied**

7        **1.    Defendants' Motion Is Inconsistent With Rule 12(e), and Seeks
               Information That Is Ascertainable During Discovery**

8

9        At the outset, Defendants' request for a more definite statement should be denied because

    it is inconsistent with the fundamental purpose of Rule 12(e). The rule is designed to remedy
10

    unintelligible pleadings, not act as a vehicle for the defendant to obtain additional information.
11

    *See Whiteway v. Fedex Kinko's Office and Print Serv., Inc.*, No. C05-2320, 2005 WL 3095864, at
12

13   *1 (N.D. Cal. Nov. 14, 2005) ("motions for a more definite statement are 'proper only where the

    complaint is so indefinite that the defendant cannot ascertain the nature of the claim being
14

15   asserted.'") (citation omitted). As a result, "Rule 12(e) motions are viewed with disfavor and are

    rarely granted." *Id.*
16

17       A more definite statement is also unwarranted here because the additional facts sought by

    Accelergy are ascertainable through discovery. *See id.* at *1 ("the inability to ascertain all of the
18

19   facts from a complaint is not an adequate ground for a more definite statement, as those concerns

    can be addressed through discovery"); *Moulton v. AmeriCredit Fin. Serv., Inc.*, No. C 04-02485,
20

21   2005 WL 1522237, at *4 (N.D. Cal. June 28, 2005) ("if the information sought is available

    through the discovery process, a Rule 12(e) motion is inappropriate"). For example, discovery in
22

23   this case will likely reveal more information about the specific Symyx resources that the

    individual defendants used to help form Accelergy. For these reasons, Defendants' motion for a
24

    more definite statement should be denied.
25

26       **2.    Symyx's Allegations Satisfy Rule 8's Liberal Pleading Requirements**

        Defendants motion for a more definite statement should also be denied because Symyx's
27

    First Amended Complaint satisfies Rule 8. Under the Federal Rules, a party's pleading must set
28

-10-

1    forth a "short and plain statement" of "the grounds for the court's jurisdiction, and of "the claim

2    showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(1). In *Bell Atlantic Corp. v.*

3    *Twombly*, 127 S.Ct. 1955, 1965-66 (2007) , the Supreme Court recently explained that a complaint

4    must state facts sufficient to show that the claims are plausible, assuming all allegations are true.

5    The Supreme Court further explained: "Asking for plausible grounds . . . does not impose a

6    probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable

7    expectation that discovery will reveal evidence" to further support the claims. *Id.* Symyx's

8    complaint meets this standard. Symyx makes specific allegations identifying the contracts that

9    were breached and interfered with, the conduct that breached and interfered with the contracts and

10    breached the duty of loyalty, and why it is entitled to relief. Nevertheless, Accelergy argues that

11    this lenient Rule 8 standard is not satisfied by Symyx's allegations concerning (i) supplemental

12    jurisdiction, (ii) breach of contract claims, (iii) unfair competition claims, and (iv) Defendants'

13    fraud. (Mot. at 9-12) As discussed below, these allegations are fully compliant with Rule 8.

14          **a.**      **Symyx's supplemental jurisdiction allegations satisfy Rule 8.**

15         Accelergy argues that Symyx's First Amended Complaint does not identify what facts are

16    common to the state and federal claims. (Mot. at 9-10) This is incorrect. Symyx's First Amended

17    Complaint makes clear that all of Symyx's claims are related to Wang, Cong and Liu's use of

18    Symyx's resources to form Accelergy to directly compete with Symyx in the HTE industry.

19    Paragraph 17 in the Amended Complaint describes how the patent claim arises in part from

20    Accelergy's "direct competition" with Symyx in "the business of offering research and

21    development products and services to customers using HTE methods." (FAC ¶ 17) Accelergy's

22    direct competition with Symyx in the HTE field is also related to all of the state law claims. (*Id.* at

23    ¶¶ 24, 27, 31, 32, 36, 39, 43, 44, 48, 55, 56, 60, 62, 67, 72) These allegations satisfy Rule 8.

24         The Federal Rules do not require Symyx to specifically plead supplemental jurisdiction,

25    much less to explain in its pleading why such jurisdiction exists. *See Sagana v. Tenorio*, 384 F.3d

26    731, 736-37 (9th Cir. 2004) ("'[a] party need not plead specific legal theories in the complaint, so

27    long as the other side receives notice as to what is at issue in the case'") (citation omitted);

28    *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 809 n.10 (2d. Cir. 1971) ("Pendent

-11-

1  jurisdiction is not matter which must be pleaded since the court already has jurisdiction over the

2  case"); *McNerny v. Nebraska Public Power Dist.*, 309 F. Supp. 2d 1109, 1116 (D. Neb. 2004)

3  ("Under Rule 8(a)(1), a jurisdictional basis need not be pleaded to establish supplemental

4  jurisdiction over a claim where the court's jurisdiction over the primary claim has been

5  established.") (citations omitted).

6       In *McNerny*, for example, the court found that by raising employment claims as a violation

7  of due process, the plaintiff subjected himself to the possibility of removal and therefore the

8  removal notice did not require an express allegation of supplemental jurisdiction over his state law

9  claims: "Therefore, irrespective of whether supplemental jurisdiction is specifically alleged in the

10  removal notice, if the plaintiff's state law claims arise from the same case or controversy as his

11  section 1983 claims, the court has supplemental jurisdiction over the state claims pursuant to 28

12  U.S.C. § 1367(a)." *McNerny*, 309 F. Supp. 2d at 1116.  Here, the Court plainly has jurisdiction

13  over Symyx's patent claims, and Symyx alleged facts sufficient to show the nexus between its

14  patent and state law claims.  Nothing more was required, and Defendants' motion for a more

15  definite statement of jurisdiction should be denied.

16                **b.    Symyx's breach of contract allegations satisfy Rule 8.**

17       Accelergy argues that Symyx's breach of contract claims should be re-plead because there

18  is a strong public policy in favor of competition and employment mobility and they do not have

19  adequate notice. (Mot. at 10-11)  Accelergy's arguments miss the mark.

20       Symyx's breach of contract claims concern activity that Wang, Cong and Liu were

21  engaged in *while they were still Symyx employees*.  Wang, Cong and Liu each agreed not to

22  compete with Symyx while they were still employed by Symyx. (FAC ¶¶ 15, 24, 36, 48)  This

23  agreement is not only enforceable, it complies with other provisions of California law.  *See, e.g.*,

24  Cal. Labor Code §§ 2860 ("[e]verything which an employee acquires by virtue of his employment

25  . . . belongs to the employer . . ."); 2863 ("[a]n employee who has any business to transact on his

26  own account, similar to that intrusted to him by his employer, shall always give the preference to

27  the business of the employer.").  Thus, Symyx's breach of contract claims are fully consistent with

28  California law, including California Business and Professions Code section 16600. *See Bancroft-*

-12-

1   *Whitney Co. v. Ada Glen*, 411 P.2d 921, 936-37 (Cal. 1966) (finding that officer violated fiduciary

2   duties when he left to work for competitor, and in the process hired workers of former employer

3   using confidential salary information, and disclosed the former employer's confidential

4   information to the competitor); *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414, 416-17 (Cal.

5   Ct. App. 2007) (finding breach of duty of loyalty by employees' secret formation of competing

6   company and misuse of confidential information during their employment); *Fowler v. Varian*

7   *Assocs., Inc.*, 196 Cal. App. 3d 34, 41-42, 44 (Cal. Ct. App. 1988) (holding that employee

8   breached duty of loyalty by refusing to provide employer with information about a competitor that

9   he was involved with, and rejecting the position that this claim violates Section 16600).

10      Symyx's allegations regarding the validity of the agreements with Wang, Cong and Liu

11   also satisfy Rule 8. "The elements of a breach of contract claim 'are the existence of the contract,

12   performance by the plaintiff or excuse for nonperformance, breach by the defendant and

13   damages.'" *Hsu v. Oz Optics Ltd.*, 211 F.R.D. 615, 619 (N.D. Cal. 2002) (Seeborg, J.).  In *Hsu*,

14   the plaintiffs alleged that they were damaged by the defendant's breach of a contractual obligation

15   to assist them in the licensing of intellectual property.  *Id.*  This Court denied a motion for a more

16   definite statement of this claim because the plaintiffs' general allegations satisfied Rule 8.  *Id.*

17      Similarly, here, Symyx's breach of contract claims also satisfy Rule 8.  The First Amended

18   Complaint specifically alleges that the agreements with Wang, Cong and Liu are "valid and

19   enforceable" contracts.  (FAC ¶¶ 25, 37, 49)  Symyx also alleges that it performed its obligations

20   under the agreements, and that it suffered damages from the breaches by Wang, Cong and Liu.

21   (FAC ¶¶ 26, 28, 38, 40, 50, 52)  This gives Accelergy "fair notice" of these issues, which is all

22   that Rule 8 requires. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (Rule 8(a) requires a

23   plaintiff to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon

24   which it rests.").  Symyx does not have to explain its legal theories as to why the agreements with

25   Wang, Cong and Liu are valid and enforceable.  *Sagana*, 384 F.3d at 736-37.

26      The First Amended Complaint also provides reasonable notice of what contract provisions

27   were breached and how.  Symyx alleges that Wang, Cong and Liu used "Symyx resources,

28   including Symyx information, data, equipment and employees" to create a competing business

-13-

1   while they were still Symyx employees.  (FAC ¶ 16; *see also* FAC ¶¶ 27, 39, 51)  These

2   allegations satisfy Rule 8 — they are  sufficient to outline the scope of discovery and to otherwise

3   put Accelergy, Wang, Cong and Liu on notice as to what conduct Symyx alleges constitutes

4   breach of its agreements with the individual defendants.  *See Swierkiewicz*, 534 U.S. at 512.  Rule

5   8 does not require more.[5]

6          The Defendants' request for additional information about the contract claims should also

7   be denied because the information they seek is available through the discovery process.  *See*

8   *Moulton*, 2005 WL 1522237, at *4 ("if the information sought is available through the discovery

9   process, a Rule 12(e) motion is inappropriate"); *see also Hsu*, 211 F.R.D. at 619 ("[t]o the extent

10  defendant seeks clarification of plaintiffs' specific contentions, discovery, rather than a Rule 12(e)

11  motion, is the proper tool").  *Moulton* involved a request for a more definite statement about credit

12  information that the defendant provided about the plaintiff.  *Id.*  The *Moulton* court denied the

13  request because "the specifics of the alleged incomplete or inaccurate information stated on

14  Plaintiff's [credit] report, as requested by [the defendant], is ascertainable through the discovery

15  process."  *Id.*  For the same reasons here, the Defendants' request should also be denied because

16  the information they seek is available through discovery.[6]

17

18  _____

19  [5]  Neither of the cases cited by the Defendants on this issue, *Oculus Innovative Sci., Inc. v. Nofil*
    *Corp.*, No. C 06-01686 SI, 2007 WL 2600746 (N.D. Cal. Sept. 10, 2007); *GlenFed Inc. Sec. Litig.*,
20  42 F.3d 1541 (9th Cir. 1994), dictate a different result.  In *Oculus*, there was no way for the
    plaintiff to determine what confidential information was at issue in the defendant's counterclaim
21  for conversion because there were no allegations to frame the claim.  2007 WL 2600746, at * 4.
    That is not the case here.  The relevant information is any Symyx business information Defendants
22  used to help form Accelergy.  *GlenFed* is similarly inapplicable, since there the Ninth Circuit
    actually held that the allegations satisfied the federal pleading requirements.  42 F.3d at 1549-50,
23  1554.

24  [6]  The remaining cases cited by Defendants on this point are inapposite.  *Cont'l Car-Na-Var*
    *Corp. v. Moseley*, 24 Cal. 2d 104, 107 (1944); *Hollingsworth Solderless Terminal Co. v. Turley*,
25  622 F.2d 1324, 1326-27 (9th Cir. 1980); *Matthews Paint Co. v. Seaside Paint and Lacquer Co.*,
    148 Cal. App. 2d 168, 169-71 (Cal. Ct. App. 1957).  None of these cases focused on whether Rule
26  8 was satisfied at all, let alone whether it was satisfied where the complaint alleged the formation
    of a competing company by a current employee using his or her employer's business information
27  in direct violation of contractual provisions.

28

**c.    Symyx's unfair competition allegations satisfy Rule 8.**

Defendants' request for more details regarding Symyx's unfair competition claims should also be denied.  These claims incorporate by reference the other allegations in the First Amended Complaint (FAC ¶¶ 67, 72), which is permissible under the Federal Rules.  Fed. R. Civ. P. 10(c) ("[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.").  As a result, Symyx has provided fair notice of the allegations related to these claims.  It has not, as Defendants argue, merely recited the elements of the causes of action.  (Mot. at 11)

Moreover, the allegations Symyx incorporated by reference adequately state claims under California Business and Professions Code section 17200.  Under California law, claims for unfair competition can arise from the unlawful business practices described in Symyx's First Amended Complaint, such as the interference with contractual relationships and breach of duty of loyalty.  *See CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007).  For example, in *CRST*, the Ninth Circuit found unfair competition was adequately pled because the plaintiff claimed that the defendant interfered with and induced the breach of agreements between the plaintiff and its employees.  *CRST*, 479 F.3d at 1107; *see also Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1217 (S.D. Cal. 2007) (finding that statutory unfair competition claim satisfied the "reasonable particularity" standard).  Here, Defendants do not argue that Symyx's claims for breach of fiduciary duty and interference with contract are deficient,[7] and the allegations Symyx makes in support of those claims alone are sufficient to satisfy the applicable pleading requirements.  Any additional information Defendants seek regarding Symyx's unfair competition claim is properly sought through the discovery process — not a motion for a more definite statement.  *See, e.g.,  Famolare, Inc. v. Edison Bros. Stores, Inc.*,

---

[7]  The case relied upon by the Defendants is inapposite.  *See Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (Cal. Ct. App. 1993).  The unfair competition claim in *Khoury* was not based on the contractual or fiduciary obligations of employees, or a competitor's interference with those obligations.  Instead, the unfair competition claim in *Khoury* concerned a distributor's refusal to continue supplying a retailer in violation of their alleged oral agreement.  *Id.* at 615.

-15-
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

1  525 F. Supp. 940, 949-50 (E.D. Cal. 1981) (denying motion for more definite statement

2  concerning unfair competition claim).

3          **d.**    **Symyx's exemplary damages allegations satisfy Rule 8.**

4        Accelergy claims that Symyx's fraud allegations fail to satisfy the requirement under Rule

5  9(b) that fraud be pled with particularity. (Mot. at 12)  But Symyx does not allege fraud.  Rather,

6  Symyx requests exemplary damages for several of its claims on the ground that Defendants acted

7  with "malice, fraud and oppression, and in conscious disregard of Symyx's rights."  (FAC ¶¶ 34,

8  46, 58, 65, 77)  These allegations do not require pleading under Rule 9(b).

9        Symyx does not allege traditional fraud which must be plead with particularity under Rule

10  9(b).  "Under California law, when a defendant 'has been [found] guilty of oppression, fraud, or

11  malice,' the court may award punitive damages." *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016,

12  1018 (S.D. Cal. 2000) (citing California Civil Code § 3294).  "In federal court, a plaintiff may

13  include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and

14  conclusory averments of malice or fraudulent intent." *Id.* at 1019.  In *Clark*, the court held that

15  "conclusory assertions of intentional and malicious misconduct" supporting a claim for punitive

16  damages satisfied the federal pleading requirements in Rules 8 and 9. *Id.* at 1019-20.  For the

17  same reasons here, Symyx's allegations supporting its claim for punitive damages also satisfy

18  Rules 8 and 9.

19        Even if Rule 9(b) is applicable to Symyx's exemplary damages request, which it is not,

20  Symyx's allegations satisfy Rule 9(b) because they identify the "who, what, when, where, and

21  how" of the misconduct charged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  Symyx

22  alleges that Wang, Cong and Liu (who) breached their contractual and fiduciary obligations by

23  secretly using Symyx's resources during their employment (how, when, where) to help form a

24  competing company (what).  (FAC ¶ 16)  Symyx further alleges that the Defendants interfered

25  with Wang, Cong and Liu's contractual obligations not to engage in any competing activities

26  during their employment by Symyx, which satisfies Rule 9(b) for the same reasons as above.  (*Id.*

27  at ¶¶ 61-63)

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

1    In addition, Symyx was not aware of the individual defendants' efforts to form Accelergy

2    during the relevant time period. (*Id.* at ¶ 16) This also supports denial of the Defendants' request,

3    because much of the information about the alleged misconduct is within their control. *United*

4    *States v. Maxxam Inc.*, No. C 06-7497, 2007 WL 2781169, at *8 (N.D. Cal. Sept. 20, 2007) ("Rule

5    9(b) may be relaxed where the evidence of fraud is within a defendant's exclusive possession, as it

6    may be here").[8]

7            **3.    Symyx's Amended Complaint Sets a Reasonable Scope For Discovery**

8    Accelergy claims that a more definite statement is necessary to define the proper scope of

9    discovery, and to prevent a "fishing expedition" by Symyx. (Mot. at 12-13) This position is also

10   wrong. Symyx's Amended Complaint sufficiently defines the issues that are relevant to discovery

11   on its claims. For example, it provides fair notice of the Symyx business information that is

12   relevant to the claims – any Symyx information Wang, Cong and Liu used to help form Accelergy

13   while they were still Symyx employees. (FAC ¶¶ 27, 39, 51) Thus, there is no likelihood of

14   overly broad discovery.

15   Moreover, a "Rule 12(e) motion is not a proper basis upon which to raise concerns about,

16   nor seek, discovery." *Whiteway*, 2005 WL 3095864, at *2. In *Whiteway*, the defendant moved for

17   an order compelling the plaintiff to further explain why he was incorrectly classified as an

18   overtime-exempt employee, and argued that discovery would be burdensome without such

19   information. *Id.* at *1. The court rejected the defendant's motion, noting that much of the detail

20   defendant sought was within its control and emphasizing that Rule 12(e) is not the proper vehicle

21   to raise discovery concerns. *Id.* Similarly, here, a more definite statement is unwarranted, since

22

23
_____

24   [8]  Even if correct, the Defendants' argument has no practical impact on Symyx's claims. Fraud is
     not an element of Symyx's claims, so those claims would not be dismissed for failure to state a

25   claim. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (if fraud is
     improperly pled, then a court should remove the allegation, and examine whether the remaining

26   allegations state a claim). Symyx's claims for exemplary damages would also not be dismissed
     because they are supported by other allegations that do not need to be pled with particularity, such

27   as malice. Fed. R. Civ. Pro. 9(b) ("[m]alice, intent, knowledge, and other conditions of a person's
     mind may be alleged generally").

28
                                                    -17-

1   the additional details Defendants seek are within their possession, and Defendants are improperly

2   attempting to address discovery concerns through Rule 12(e).

3       Defendants further claim that broad discovery on Symyx's breach of contract claims will

4   enable Symyx employees to access their proprietary information. (Mot. at 13)  But this concern is

5   mooted by the entry of an appropriate protective order, which the parties have already started

6   negotiating.  Similarly, the Defendants' claim that they will be forced to defend against a "moving

7   target" is also unsupported, because they can request Symyx's contentions during discovery. (*Id.*)

8   **IV.    CONCLUSION**

9       For the reasons discussed above, Symyx respectfully requests that this Court deny

10  Defendant's Motion to Dismiss, or, in the Alternative, for a More Definite Statement.

11  DATED:  February 20, 2008              QUINN EMANUEL URQUHART OLIVER &
                                           HEDGES, LLP
12

13
                                           By    /s/ Claude M. Stern
14                                             Claude M. Stern
                                               Evette D. Pennypacker
15                                             Bobbie N. Eftekar
                                               Mark D. Baker (admitted *pro hac vice*)
16
                                               Attorneys for Plaintiff
17                                             Symyx Technologies, Inc.

18

19

20

21

22

23

24

25

26

27

28

-18-