1  MATTHEW D. POWERS (Bar No. 104795)
   E-Mail: matthew.powers@weil.com
2  CHRISTOPHER J. COX (Bar No. 151650)
   E-Mail: chris.cox@weil.com
3  GREGORY D. HULL (Bar No. 57367)
   E-Mail: greg.hull@weil.com
4  WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway
5  Redwood Shores, CA 94065
   Telephone: (650) 802-3000
6  Facsimile: (650) 802-3100

7  Attorneys for Defendants
   ACCELERGY CORPORATION, YOUQI
8  WANG, PEIJUN CONG and YUMIN LIU

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12 | SYMYX TECHNOLOGIES, INC.,            | Case No. C 07 04050 RS
13 |         Plaintiff,                   | **DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**
14 |   v.                                 |
15 | ACCELERGY CORPORATION, YOUQI WANG, PEIJUN CONG and YUMIN LIU, |
16 |         Defendants.                  | Hearing: March 19, 2008
17 |                                      | Time:    9:30 a.m.
   |                                      | Place:   Courtroom 4, 5th Flr.
18 |                                      | Magistrate Judge Richard Seeborg

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED ..................................... 2

    A.    The Court Lacks Jurisdiction Over The State Law Claims.......................................... 2

    B.    Symyx Has Not Explained Why The Court Should Retain Jurisdiction Even If Supplemental Jurisdiction Existed ...................................................... 5

III. SYMYX'S ALLEGATIONS ARE SO INSUFFICIENTLY PLED THAT ACCELERGY AND THE INDIVIDUAL DEFENDANTS CANNOT REASONABLY RESPOND.................................................................................................. 8

    A.    Accelergy's Motion Is Consistent With Rule 12(e) ................................................. 8

    B.    Symyx's Supplemental Jurisdiction Allegation Is Inadequate .............................. 9

    C.    Symyx Should Submit A More Definite Statement To Cure Its Vague And Inadequately Pled Allegations And To Focus Discovery ................................... 10

        1.    Symyx's opposition does not clarify what "information" and "resources" were allegedly misused............................................................. 10

        2.    Symyx's unfair competition claims are not pled with reasonable particularity ......................................................................................... 13

        3.    Symyx's fraud allegations are inadequately pled...................................... 13

IV. CONCLUSION.................................................................................................................. 14

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Aqua-Lung America, Inc. v. Amer. Underwater Products, Inc.,*
    No. C-07-2346 RS, 2007 WL 3169050 (N.D. Cal. Oct. 29, 2007).................................. 5

*Allen v. County of Monterey*,
    No. C-06-07293, 2007 WL 3070973 (N.D. Cal. Oct. 19, 2007) .................................. 2, 5

*Align Technology, Inc. v. Miller*,
    No. C-05-3418 MMC, 2005 WL 3445623 (N.D. Cal. Dec. 14, 2005) ........................... 13

*BMC Resource, Inc. v. Paymentech, LP.*,
    498 F.3d 1373 (Fed. Cir. 2007)...................................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ........................................................................................... passim

*CRST Van Expedited, Inc . v. Werner Enterprise, Inc.*,
    479 F.3d 1099 (9th Cir. 2007)....................................................................................... 13

*Carroll Touch, Inc. v. Electro Mechanical System, Inc.*,
    15 F.3d 1573 (Fed. Cir. 1993)........................................................................................ 5

*Chimie v. PPG Industrial, Inc.*,
    402 F.3d 1371 (Fed. Cir. 2005).................................................................................. 3, 6

*Clark v. Allstate Insurance Co.*,
    106 F. Supp. 2d 1016 (S.D. Cal. 2000) ................................................................... 13, 14

*Computer Economics, Inc. v. Gartner Group, Inc.*,
    50 F. Supp. 2d 980 (S.D. Cal. 1999) ............................................................................ 11

*Eli Lilly and Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004)...................................................................................... 3

*Hsu v. Oz Optics Ltd.*,
    211 F.R.D. 615 (N.D. Cal. 2002) ................................................................................. 12

*In re GlenFed Inc. Sec. Litigation*,
    42 F.3d 1541 (9th Cir. 1994)........................................................................................ 12

*In re Seagate Technology, LLC*,
    497 F.3d 1360 (Fed. Cir. 2007)...................................................................................... 7

*Kuba v. 1-A Agricultural Association*,
    387 F.3d 850 (9th Cir. 2004)......................................................................................... 2

*Leather's Best, Inc . v. S.S. Mormaclynx*,
    451 F.2d 800 (2d. Cir. 1971)......................................................................................... 9

*LiveOps, Inc. v. Teleo, Inc.*,
    No. C05-03773 MJJ, 2006 WL 83058 (N.D. Cal Jan. 9, 2006)...................................... 5

*Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*,
    24 F.3d 1368 (Fed. Cir. 1994).................................................................................. passim

**TABLE OF AUTHORITIES, cont'd.**

*McNerny v. Nebraska Public Power District*,
    309 F. Supp. 2d 1109 (D. Neb. 2004) .................................................................................. 9

*Mendoza v. Zirkle Fruit Co.*,
    301 F.3d 1163 (9th Cir. 2002) ............................................................................................. 5

*Moulton v. AmeriCredit Finance . Serv., Inc.*,
    No. C-04-02485, 2005 WL 1522237 (N.D. Cal. June 28, 2005) .................................. 8, 12

*Multimedia Patent Trust v. Microsoft Corp.*,
    525 F. Supp. 2d 1200 (S.D. Cal. 2007) .............................................................................. 13

*Oculus Innovative Sci., Inc. v. Nofil Corp.*,
    No. C-06-01686 SI, 2007 WL 2600746 (N.D. Cal. Sept. 10, 2007) ........................... passim

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ........................................................................................... 6

*Sagana v. Tenorio*,
    384 F.3d 731 (9th Cir. 2004) ............................................................................................... 9

*Taiwan Semiconductor Manufacturing Co., Ltd. v. Semiconductor Manufacturing International Corp.*,
    No. C-03-5761 MMC, 2004 WL 5212448 (N.D. Cal. Apr 21, 2004) ................................ 8

*Tripp v. United States*,
    406 F.2d 1066 (Ct. Cl. 1969) .............................................................................................. 3

*United Mine Workers of America v. Gibbs*,
    383 U.S. 715 (1966) ......................................................................................................... 2, 9

*Virginia Panel Corp., v. Mac Panel Co.*,
    133 F.3d 860 (Fed. Cir. 1997) ......................................................................................... 5, 6

*Whiteway v. Fedex Kinko's Office and Print Serv., Inc.*,
    No. C05-2320, 2005 WL 3095864 (N.D. Cal. Nov. 14, 2005) ........................................... 8

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) ............................................................................................... 3

**STATE CASES**

*Bancroft-Whitney Co. v. Glen*,
    411 P.2d 921 (Cal. 1966) .................................................................................................. 12

*Huong Que, Inc. v. Luu*,
    150 Cal. App. 4th 400 (Cal. App. 2007) ........................................................................... 12

*Khoury v. Maly's of California, Inc.*,
    14 Cal. App. 4th 612 (Cal. App. 1993) ............................................................................. 13

*Mathews Paint Co. v. Seaside Paint and Lacquer Co.*,
    148 Cal. App. 2d 168 (Cal. Ct. App. 1957) ...................................................................... 12

**TABLE OF AUTHORITIES, cont'd.**

**FEDERAL STATUTES**

| | |
|---|---|
| 35 U.S.C. § 271 | 6 |
| 28 U.S.C. § 1367 | 2, 5 |
| Fed. R. Civ. P. 8 | 9, 12, 13 |
| Fed. R. Civ. P. 9 | 13 |
| Fed. R. Civ. P. 12 | passim |
| Fed. R. Civ. P. 30 | 10 |

**I.**

**INTRODUCTION**

Symyx's opposition brief, like its Amended Complaint, fails to identify any facts establishing that supplemental jurisdiction exists over Symyx's state claims. Rather, Symyx confirms through its opposition that the patent infringement claim against Accelergy over which the Court has original jurisdiction and the circumstances giving rise to the state claims against Accelergy and Youqi Wang, Peijun Cong and Yumin Liu (collectively, "the Individual Defendants") do not share a common nucleus of operative facts. Symyx repeatedly admits that each of its state claims is based solely on the Individual Defendants' alleged unauthorized use of Symyx's "information" and "resources" to form Accelergy while the Individual Defendants were still employees of Symyx (prior to September 2003). Symyx also concedes that its infringement claim against Accelergy – a federal claim involving only one defendant and one patent – arose nearly four years later, in May 2007 when the '113 patent issued. Symyx's Amended Complaint (Docket No. 7) contains no allegations tying the federal claim to the state claims and its opposition brief fails to identify the nexus missing from the Amended Complaint. A trial – whether joined with this action or separately in state court – on Symyx's nine state claims will require a mountain of evidence and argument on different legal theories against three additional parties, which have no relationship to the patent infringement suit. Trying these issues together will inevitably lead to jury confusion and undue prejudice to the defendants. Given this posture, the Court should require Symyx to pursue its state claims in state court and its federal claim in federal court.

If Accelergy's motion to dismiss is denied, the Court should direct Symyx to provide a more definite statement of its claims under Rule 12(e). Discovery in this case is framed by the complaint and this Court has "the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1967 (2007) (citation omitted). Symyx vaguely alleges that the Individual Defendants misused Symyx's "information" and "resources" during their employment at Symyx to form Accelergy, but, in its opposition, does not describe what was allegedly used or taken.

Without an adequate disclosure of the allegedly misused "information" and "resources" defining the metes and bounds of Symyx's state claims, Accelergy cannot reasonably prepare a responsive pleading and the Court has no meaningful yardstick for controlling the scope of discovery, which is particularly important here where the parties are allegedly direct competitors.

## II.

## PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED

### A.    The Court Lacks Jurisdiction Over The State Law Claims

As a threshold matter, Symyx advances a test for supplemental jurisdiction that is inconsistent and irreconcilable with the plain language of the supplemental jurisdiction statute (28 U.S.C. § 1367) and binding Supreme Court and Ninth Circuit precedent.  Rather than address this applicable authority, Symyx relies on a slip opinion applying Seventh Circuit authority – *Allen v. County of Monterey*, No. C-06-07293, 2007 WL 3070973, at *4 (N.D. Cal. Oct. 19, 2007) – for the proposition that a "'loose factual connection' between the claims suffices for the claims to be considered one 'case' under Article III."  Putting aside the inherent challenges of applying this ambiguous test, a "loose factual connection" will rarely render federal and state claims "**so related** … that they form part of the same case or controversy under Article III of the United States Constitution" such that supplemental jurisdiction exists.  28 U.S.C. § 1367(a) (emphasis added).  Indeed, the Supreme Court and the Ninth and Federal Circuit courts have consistently held that much more than a "loose factual connection" is required:  "The state and federal claims must derive from a **common nucleus** of operative fact" such that those claims "would ordinarily be expected to" be tried together in a single judicial proceeding.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (emphasis added); *see e.g., Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 855 (9th Cir. 2004); *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1374 (Fed. Cir. 1994) ("The relatedness requirement of section 1367(a) is satisfied by … meeting the 'common nucleus of operative fact' test of *Gibbs*.").

Even assuming that a "loose factual connection" is the relevant standard, Symyx's Amended Complaint pleads no factual allegations establishing that Accelergy's allegedly infringing acts have **any** connection to the conduct giving rise to the state claim.  To the contrary,

two distinct factual nuclei are manifest from Symyx's Amended Complaint. Symyx admits in its opposition that "Symyx's state claims are relatively ordinary contract, employment, and unfair competition claims related to Wang, Cong, and Liu's wrongful use of Symyx's business information to form a competing company – Accelergy." Symyx's Opposition Brief (Docket No. 22; hereafter "Opp.") at 9:12-14. Its state claims are limited to the Individual Defendants' alleged improper use of Symyx's "resources" and "information" and each defendants' interference with the Individual Defendants' contractual obligations to Symyx while the Individual Defendants were Symyx employees, *i.e.*, prior to September 2003. Opp. at 2:24-3:2, 5:6-7, 5:15-16, 6:12-14, 12:20-21, 15:10-12.

Symyx concedes that its infringement claim against Accelergy is based solely on alleged infringement of the '113 patent (*id.* at 3:3:19-20), which issued in May 2007 (Amended Complaint at ¶ 19) and does not name any of the Individual Defendants as inventors.[1] Nowhere in Symyx's Amended Complaint or its opposition brief does it allege facts bridging the four-year gap between the conduct giving rise to the state law case and the facts relating to the patent infringement case. In short, the circumstances – including the time, place, actors, acts and subject matter – at the core of Symyx's state claims do not share a "common nucleus" with the federal claim.

Despite the plain factual disconnect between the federal and state claims, Symyx now contends – though did not plead in its Amended Complaint[2] – that those claims are related because the Individual Defendants' "improper use of Symyx's information [during their employment at Symyx] precipitated Accelergy's infringement of the '113 patent." Opp. at 5:9-10; *see id.* at 1:8-10, 7:15-17. Essentially, Symyx's alleged nexus is that Accelergy would not

---

[1] As a matter of law, Accelergy could not have infringed the '113 patent until it issued in May 2007. *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1382 (Fed. Cir. 2005) (stating that "a patent cannot be infringed by acts done before its issuance"); *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1356, n. 1 (Fed. Cir. 2004); *Tripp v. United States*, 406 F.2d 1066, 1071 (Ct. Cl. 1969).

[2] On this motion to dismiss, the Court's review is limited to the face of the pleading. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Thus, Symyx's latest allegations attempting to tie the federal and state claims are beyond the proper scope of the Court's review. Regardless, even these new allegations do not establish that the state and federal claims share a common factual nucleus.

have infringed the '113 patent if the Individual Defendants never formed it in the first place. *Id.* at 8:22-25 (Symyx's federal and state claims "share a common factual background – Wang, Cong and Liu's improper use of Symyx's resources to help form a competing company that infringes Symyx's patent."); 5:11-12 ("if Wang, Cong and Liu had not improperly used Symyx's resources to help form Accelergy, the '113 patent would never have been infringed."). Symyx's "but for" assertion is specious. Symyx is not alleging trade secret misappropriation,[3] copying or willful infringement. Indeed, there are no factual allegations in Symyx's Amended Complaint that any of the defendants engaged in any tortious conduct between late-2003 (when the state claims purportedly matured) and mid-2007 (when the '113 patent issued).

Though it did not plead this in its Amended Complaint, Symyx also contends in its opposition that that the state and federal claims share a common nucleus because "the provisional and regular applications for the '113 patent were pending and being prosecuted during the same time Wang, Cong and Liu were still employed by Symyx and using Symyx's information to improperly create Accelergy to compete with Symyx." Opp. at 6:19-7:1. Yet Symyx does not allege that the Individual Defendants participated in the work that led to the invention claimed in the '113 patent.[4] Nor does Symyx allege that the Individual Defendants had access to, drafted, contributed to or were in any other way involved with the application process. Symyx also does not allege that Symyx's patent-pending technology was used by the Individual Defendants to form Accelergy or to develop the accused Accelergy methods and products prior to issuance of the '113 patent. *See e.g.*, Amended Complaint at ¶ 16, 20, 27, 39, 51. Symyx also does not claim that Accelergy or the Individual Defendants copied Symyx's patented technology because Symyx does not accuse Accelergy of willful infringement. Without more, the Individual Defendants' bare employment by Symyx during the pendency of a patent application is not enough to establish a nexus or discernable overlap of "operative fact" between the events giving rise to the state

---

[3] Symyx asserts that it would have "every right" to add a trade secret claim if the facts supported such a claim. Opp. at 9:26-27. However, it waited approximately four years to file the existing state law claims and allowed the three-year Statute of Limitations for trade secret claims to expire. It has no right to claim trade secret misappropriation at this late date.

[4] Although not named inventors on the '113 patent, the Individual Defendants are accomplished scientists and inventors in their own right. *See* Amended Complaint at ¶ 4-6.

claims and Accelergy's alleged patent infringement many years later. Symyx has not shown, even under its "loose factual connection" test, that supplemental jurisdiction exists over Symyx's state claims.[5]

### B. Symyx Has Not Explained Why The Court Should Retain Jurisdiction Even If Supplemental Jurisdiction Existed

Supplemental jurisdiction is not automatic, and the exercise of jurisdiction over non-federal claims is "discretionary with the district court." *Mendoza v. Zirkle Fruit Co.,* 301 F.3d 1163, 1174 (9th Cir. 2002). Even assuming supplemental jurisdiction could be found over the state claims, the Court should decline to exercise jurisdiction (28 U.S.C. § 1367(c)) because this is precisely the type of case where federal and state claims should be tried in different courts.

If allowed to proceed, Symyx's state claims will predominate over the narrow federal claim because there is no relevant factual or legal overlap between the patent infringement claim and the state claims. Symyx's federal claim – as Symyx admits (Opp. at 3:19-20) – concerns a single patent and just one defendant's products and methods. The patent infringement issues are narrow, focused and completely separate from the state issues. "A determination of infringement requires a two step analysis. 'First, the claim must be properly construed to determine its scope and meaning.'" *Virginia Panel Corp., v. Mac Panel Co.*, 133 F.3d 860, 865 (Fed. Cir. 1997) citing *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576

---

[5] The cases cited by Symyx in support of exercising jurisdiction over its state claims – *Aqua-Lung*, *LiveOps* and *Allen* – are inapposite. In *Aqua-Lung*, this Court found – essentially by default – that supplemental jurisdiction existed over the state claims because Aqua-Lung's briefing on the issue was wholly inadequate: "Aqua-Lung's assertion that Two-Forty's misappropriation and fraud counterclaims are so disconnected from its patent claims as to preclude supplemental jurisdiction is made **without meaningful analysis or citation to authority**." *Aqua-Lung Am., Inc. v. Amer. Underwater Prods., Inc.*, No. C 07-2346 RS, 2007 WL 3169050, at *1 (N.D. Cal. Oct. 29, 2007) (emphasis added). In *LiveOps*, the Court concluded that it had supplemental jurisdiction over the state claims because the same "proprietary information" and a common "unauthorized use" was at the heart of the federal copyright infringement claim. *LiveOps, Inc. v. Teleo, Inc.*, No. C05-03773 MJJ, 2006 WL 83058, at *3 (N.D. Cal Jan. 9, 2006). In *Allen*, "both sets of claims implicate[d] the practices and procedures of" the defendant and "the alleged facts underlying" the federal claim were "relevant to" the defendant's subsequent misconduct that gave rise to the state claims less than one year later. *Allen*, 2007 WL 3070973, at *5. In this case, Symyx does not contend that its state claims involve the claimed inventions of the '113 patent or that each Individual Defendant's alleged unauthorized use of Symyx's "information" and "resources" involved use of Symyx's patented technology, and Symyx allowed the three-year Statute of Limitations for trade secret misappropriation to lapse long ago.

(Fed. Cir. 1993). Next, based on the Court's construction of the terms of the '113 patent, the jury will determine whether each of the accused Accelergy products and methods "perform[s] or use[s] each and every step or element of a claimed method or product." *BMC Res., Inc. v. Paymentech, LP.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007).

Here, claim construction requires no consideration of evidence that the Individual Defendants used Symyx's resources to form a company that allegedly infringes the '113 patent. Indeed, such evidence is not relevant. To determine the meaning of the '113 patent's claim terms, the Court will consider the meaning that the terms would have to a person of ordinary skill in the art in March 2000 when the provisional application was filed. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Construction of the terms is based "upon the claim language, the written description portion of the specification, the prosecution history, and, if necessary to aid the court's understanding of the patent, extrinsic evidence." *Virginia Panel Corp.*, 133 F.3d at 865. None of the intrinsic or extrinsic evidence that the Court will consider in its analysis is even remotely related to the Individual Defendants' acts during their employment with Symyx, the formation of Accelergy, the defendants' alleged interference with Symyx's employment contracts with the Individual Defendants, or unfair competition with Symyx.

Because Symyx's infringement claim matured no earlier than May 8, 2007 when the '113 patent issued, the jury will determine only whether accused Accelergy products and methods that were made, used, sold, offered for sale or imported for the past eight months infringe the '113 patent. *See* Amended Complaint at ¶ 19; 35 U.S.C. § 271; *Chimie*, 402 F.3d at 1382. Accordingly, all evidence concerning Symyx's state claims – such as Symyx's alleged written agreements with the Individual Defendants (Amended Complaint at ¶ 15), the Individual Defendants alleged misuse of Symyx's "information" and "resources" during their employment with Symyx (*id*. at ¶¶ 2, 4, 5, 6, 15, 16) and Accelergy's supposed "utiliz[ation] [of] the services of" the Individual Defendants "while they were employed by Symyx" in 2003 (*id*. at ¶¶ 16, 63) – is completely irrelevant to the jury's infringement analysis.[6] Further, "how Accelergy came to

---

[6] Even assuming "Accelergy's activities before the '113 patent issued" could be relevant to showing Accelergy's post-issuance products and methods constitute infringement (Opp. at 7:1-2), those activities are irrelevant to Symyx's state claims which are based on the Individual

infringe [Symyx's] patent" (Opp. at 5:14-16) could only be relevant, if at all, to a claim of willful infringement. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Symyx makes no such claim in this action.

Contrary to Symyx's assertion that evidence on the federal and state claims "substantially overlaps" (Opp. at 9:16-19), a trial on the nine state claims will require substantial additional evidence and completely different legal theories. Indeed, the evidence (documentary and testimonial) concerning Symyx's state claims (Amended Complaint at ¶¶ 23-77) is wholly separate from and considerably more voluminous than the evidence needed to adjudicate Symyx's infringement claim against Accelergy. Indeed, allowing the state claims to proceed will require three additional parties to defend against Symyx's claims. A trial on Symyx's state claims will require evidence concerning the scope, validity and enforceability of Symyx's employment agreements with the Individual Defendants under California law (*id.* at ¶¶ 15, 24, 36, 48); the scope, validity and enforceability of the purported duty of loyalty the Individual Defendants owed to Symyx (*id.* at ¶¶ 16, 31, 43, 55); Symyx's "information" and "resources" that were allegedly misused by the Individual Defendants in the "formation" of Accelergy and the alleged role the Individual Defendants had in such "formation" (*id.* at ¶¶ 15, 16, 27, 32, 39, 44, 51, 56); Accelergy's alleged "utilization" of the Individual Defendants "while they were employed by Symyx" (*id.* at ¶¶ 16, 63) and damages allegedly suffered by Symyx as a result of each defendant's acts (*id.* at ¶¶ 28, 33, 40, 45, 52, 57, 64, 70, 75). A trial on the state claims would plainly require introduction of evidence, argument and proof far beyond that associated with the federal patent claim.[7]

Symyx does not deny the substantial likelihood of jury confusion if Symyx's state

---

Defendants' alleged misuse of Symyx's "information" and "resources" – not the patented subject matter – during their employment at Symyx.

[7] Symyx's contention that the same "HTE technology, the HTE market and industry" is relevant to both its state and federal claims (Opp. at 1:13-14, 7:20-22, 9:18-17) is misguided. Symyx's patent infringement claim concerns one facet of HTE technology – the claims of the '113 patent – and those accused Accelergy products and methods that allegedly employ the same HTE applications. By comparison, Symyx's state claims ostensibly relate to a different, much broader category of all Symyx "information" and "resources" concerning HTE technology. *See* Amended Complaint at ¶ 14; Opp. at 2:2, 5:6-7, 14:21-22.

and federal claims are tried in a single proceeding. Instead, Symyx contends a trial on the state claims will not be "**exceptionally** confusing to a jury." Opp. at 9:23-24 (emphasis added). But as discussed in the opening brief, jury confusion is inevitable because Symyx seeks to introduce substantial evidence that is completely irrelevant to the patent infringement claim. *See Taiwan Semiconductor Mfg. Co., Ltd. v. Semiconductor Mfg. Int'l Corp.*, Case No. C-03-5761 MMC, 2004 WL 5212448, at *6 (N.D. Cal. Apr 21, 2004).[8] Further, Symyx should not be permitted to use its state claims as a back-door to introduce evidence on Accelergy's and the Individual Defendants' alleged prior bad acts to influence the jury's determination over the relatively circumscribed question of whether Accelergy is infringing the '113 patent. *See id*. Indeed, Symyx contends that "[t]o explain how Accelergy came to infringe [Symyx's] patent, Symyx will invariably explain the events leading up to Accelergy's formation." Opp. at 5:14-15. Accelergy's formation has no bearing on the issue of whether Accelergy's products and methods infringe the '113 patent. Not only will this confuse the jury, it will unnecessarily increase the risk of undue prejudice against Accelergy on the patent infringement issue.

### III.

**SYMYX'S ALLEGATIONS ARE SO INSUFFICIENTLY PLED THAT ACCELERGY AND THE INDIVIDUAL DEFENDANTS CANNOT REASONABLY RESPOND**

**A.    Accelergy's Motion Is Consistent With Rule 12(e)**

Symyx's contention that Accelergy's and the Individual Defendants' request for a more definite statement should be denied because Rule 12(e) "is designed to remedy unintelligent pleadings, not act as a vehicle for" the defendants "to obtain additional information" (Opp. at 10:8-11, 17:15-16) is inconsistent with the Supreme Court's recent *Bell Atlantic* decision.[9]

---

[8] Symyx contends that *Taiwan Semiconductor* is inapposite because "none of [Symyx's] state claims contain wide-ranging allegations such as those in *Taiwan Semiconductor*." Opp. at 9:11-12. To the contrary, Symyx's allegations are even more diffuse than the allegations at issue in *Taiwan Semiconductor*. In *Taiwan Semiconductor*, "the state claims concern[ed] exceptionally broad allegations of theft of a multitude of 'technical,' 'operational' and 'business' trade secrets." *Taiwan Semiconductor*, 2004 WL 5212448, at *7. In this case, Symyx's state claims concern even broader allegations of misuse of undefined Symyx "information," "data" and "resources." Amended Complaint at ¶¶ 15, 27, 32, 39, 44, 51, 56; Opp. at ¶ 14:21-22.

[9] Symyx relies on two district court slip opinions – *Whiteway v. Fedex Kinko's Office and Print Serv., Inc.*, No. C05-2320, 2005 WL 3095864 (N.D. Cal. Nov. 14, 2005) and *Moulton v. AmeriCredit Fin . Serv., Inc.*, No. C 04-02485, 2005 WL 1522237 (N.D. Cal. June 28, 2005) –

Symyx's Amended Complaint does not plead sufficient facts to conclude that supplemental jurisdiction exists over Symyx's state claims and does not adequately plead its state claims to give Accelergy and the Individual Defendants "fair notice" of its claims. Fed. R. Civ. P. 8(a); *Bell Atlantic*, 127 S.Ct. at 1964-66. Here, "[t]he remedy for an allegation lacking sufficient specificity to provide adequate notice is, of course, a Rule 12(e) motion for a more definite statement." *Bell Atlantic*, 127 S.Ct. at 1985, n.9.

### B. Symyx's Supplemental Jurisdiction Allegation Is Inadequate

Supplemental jurisdiction is not presumed. As the complainant, Symyx bears the burden of pleading factual allegations that establish supplemental jurisdiction over its state claims. *See Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1372 (Fed. Cir. 1994) ("A party seeking the exercise of jurisdiction in its favor bears the burden of establishing that such jurisdiction exists."). As discussed above, to meet its pleading burden and support its allegation that "the Court has supplemental jurisdiction" (Amended Complaint at ¶ 8), Symyx must show that its state and federal claims "derive from a common nucleus of operative fact." *Gibbs*, 383 U.S. at 725.[10] Contrary to Symyx's argument, it is far from "clear" that all of Symyx's state claims against the Accelergy and the Individual Defendants "are related to" the patent infringement claim against Accelergy. *See* Opp. at 11:16-23. The factual allegations in the Amended Complaint do not show or even suggest that supplemental jurisdiction exists.

---

that issued two years before the Supreme Court's *Bell Atlantic* decision that now governs the pleading standard set forth in the Federal Rules.

[10] None of the cases cited by Symyx support a claim that supplemental jurisdiction must not be apparent from the face of the complaint. *See McNerny v. Nebraska Public Power Dist.*, 309 F. Supp. 2d 1109, 1116 (D. Neb. 2004) ("[S]upplemental jurisdiction need not be specifically pleaded if the relationship between the federal claim and the state claim permits the conclusion that **the entire action** is derived from a common nucleus of operative fact." (emphasis added)); *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 811 (2d. Cir. 1971) (finding that "the facts underlying the state and federal claims [we]re **identical**" so plaintiff's burden was readily met (emphasis added)). *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004) is inapposite because it did not address whether supplemental jurisdiction had been adequately pled in the complaint. Moreover, *Sagana* applied the "no set of facts" test for determining the sufficiency of a pleading – a test that was recently rejected by the Supreme Court in *Bell Atlantic*. *Bell Atlantic*, 127 S.Ct. at 1969.

**C.    Symyx Should Submit A More Definite Statement To Cure Its Vague And Inadequately Pled Allegations And To Focus Discovery**

Symyx also contends that "[a] more definite statement is unwarranted here because the additional facts sought by Accelergy [and the Individual Defendants] are ascertainable through discovery." Opp. at 10:16-17. But discovery is not remedy for an inadequately pled complaint. Because the scope of discovery is controlled by the allegations pled, a more definite statement at this stage in the litigation is justified. Indeed, the Court has "the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atlantic*, 127 S.Ct. at 1967 (citation omitted).[11]

### 1.    Symyx's opposition does not clarify what "information" and "resources" were allegedly misused

Symyx does not dispute that "breach by the defendant" is an element of its breach of contract claims against the Individual Defendants. Opp. at 13:11-13. The center piece of Symyx's claim is that the Individual Defendant used "Symyx's **business information**." Amended Complaint at ¶¶ 27, 39, 51 (emphasis added). Symyx's breach of contract and breach of duty of loyalty claims also are based on alleged uses of "Symyx **resources**, including Symyx information, data, equipment and employees." *Id.* at ¶¶ 2, 4, 5, 6, 15, 16 (emphasis added). Symyx's opposition does not describe or identify any of the "information" and "resources" that were allegedly misused. Symyx's contention that "[t]he relevant information is **any** Symyx business information Defendants used to help form Accelergy" (Opp. at 14:21-22, 17:11-13) is

---

[11] Indeed, after defendants filed the opening brief, Symyx served on Accelergy and the Individual Defendants 31 interrogatories, 198 requests for admissions, 111 requests for documents ("RPD") and a notice of deposition pursuant to Rule 30(b)(6) ("Notice") with 40 Topics. Many of Symyx's requests are unfocused, without any temporal limitation and seek information that is not relevant to any Symyx claim. For example, Symyx seeks every communication and all documents concerning any communications between Accelergy and the Individual Defendants (RPD to Accelergy, Nos. 8-13) – not only the discussions concerning the formation of Accelergy. Symyx also seeks testimony and documents concerning every aspect of Accelergy's past and present business, including every communication, agreement or negotiation between Accelergy and anyone who sought to or actually invested in Accelergy (Notice Topics Nos. 10-12), all of Accelergy's research, development, testing, operation, protocols and application of every Accelergy product ever made (Notice Topics Nos. 2-8) and all marketing, sales and financial information concerning every Accelergy product (Notice Topics Nos. 20-22, 29-30).

unhelpful. After reading the opposition, it is unclear whether even Symyx knows what its claims are.

Further, Symyx's intimation that it may also have a claim for trade secret misappropriation (Opp. at 9:26-27) suggests the allegedly misused "information" and "resources" are not trade secrets. However, to the extent Symyx believes it has trade secrets, it is particularly prudent at this stage for Symyx to describe the allegedly misused "resources" and "information" as well as its trade secrets before embarking on discovery. *Cf. Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999) (setting forth rationales for requiring disclosure of trade secrets before commencement of discovery). Even assuming, as Symyx contends, that the "details Defendants seek are within their possession" (Opp. at 17:21-18:1), Symyx should identify facts in its possession sufficient to frame the issues. At this stage, Symyx should describe *at least* the "information" and "resources" it knows the Individual Defendants used and that formed the bases for its claims at the time it filed its Amended Complaint. Symyx should also identify the "information" and "resources" that it believes Accelergy or the Individual Defendants continue to use so that the temporary restraining order and the preliminary and permanent injunctive relief sought by Symyx is no broader than necessary. Amended Complaint at ¶ C. Instead of offering to provide some clarity, Symyx asks the Court to simply sanction its pleading so that Symyx can conduct onerous, unfocused discovery in an alleged competitor's camp. In this setting, the Court should be reluctant to allow discovery to go forward without clear boundaries. Indeed, Symyx's vague allegations are a danger sign that Symyx is engaged in a fishing expedition to find something that fits into the amorphous category of misused "information" and "resources" or that could later be cast as a Symyx trade secret.

A similarly vague allegation was at issue in *Oculus Innovative Sci., Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746 (N.D. Cal. Sept. 10, 2007). In *Oculus*, the Court granted a motion for a more definite statement with respect to the defendant's counterclaim which – like Symyx's allegation here – claimed that plaintiff had "wrongfully converted [defendant's] confidential proprietary information." *Id*. at *4. The Court concluded that although "a detailed

inventory of all the proprietary information allegedly misappropriated" is not needed at the pleading stage, "without knowing at least the general nature of the information" allegedly misappropriated, the respondent cannot "reasonably be required to frame a responsive pleading." *Id*. This outcome is consistent with *Bell Atlantic*'s mandate that courts insist on some specificity in the pleading to control the scope of later discovery and to police against discovery abuses. *Bell Atlantic*, 127 S.Ct. at 1967.[12]

Although Symyx contends that its "breach of contract claims are fully consistent with California law" (Opp. at 12:17-28), Symyx's failure to describe the "information" and "resources" allegedly used in the formation of Accelergy does not obviate a conclusion from the allegations as-pled that Symyx is seeking relief inconsistent with California policy and law. According to Symyx, the Individual Defendants' use of "any Symyx business information" was a breach of their respective employment agreements. Opp. at 14:21-22, 17:11-13; *see* Amended Complaint at ¶¶ 27, 39, 51. However, Symyx does not plead that the purportedly misused "resources" and "information" were secret and confidential or allege that the "resources" and "information" were not readily accessible to others.[13] *See Mathews Paint Co. v. Seaside Paint and Lacquer Co.*, 148 Cal. App. 2d 168, 171, 171-72 (Cal. Ct. App. 1957) (stating that the Court's powers to enjoin a former employee extend only to "secret and confidential" information of the employer). Defendants should not have to make assumptions from Symyx's vague allegations to convince themselves that Symyx's claim are meritorious. *See In re GlenFed Inc. Sec. Litig.*, 42 F.3d 1541, 1544 (9th Cir. 1994).

---

[12] Neither of the cases cited by the Defendants – *Hsu v. Oz Optics Ltd.*, 211 F.R.D. 615, 619 (N.D. Cal. 2002) and *Moulton v. AmeriCredit Fin. Serv., Inc.*, No C 04-02485, 2005 WL 1522237 (N.D. Cal. June 28, 2005) – are inconsistent with this proposition. In *Hsu*, the breach of contract claim was based on defendant's refusal to perform its obligations under an agreement – not a misuse of poorly-identified information. 211 F.R.D. at 617, 619. In *Moulton*, the Court denied a motion for a more definite statement because, by the time the court resolved the motion, the plaintiff's discovery responses had given the defendant the more specific information it believed should have been pled. 2005 WL 1522237 at *4.

[13] By contrast, in the cases relied on by Symyx – *Bancroft-Whitney* and *Huong Que, Inc.* – the plaintiff alleged that the defendant misused plaintiff's "confidential" customer lists and salary information. *Bancroft-Whitney Co. v. Glen*, 411 P.2d 921, 925-925 (Cal. 1966); *Huong Que, Inc. v. Luu*, 150 Cal.App.4th 400, 416 (Cal. App. 2007).

**2.** <u>Symyx's unfair competition claims are not pled with reasonable particularity</u>

Symyx contends that its unfair competition claims meet Rule 8's pleading standard because "[t]hese claims incorporate by reference the other allegations in the First Amended Complaint." Opp. at 15:2-4. But this is precisely why Symyx does not meet the relevant pleading requirements. Symyx's omnibus incorporation of all of the complaint's allegations – including those that are vague and poorly-pled – fails to provide defendants with fair notice of the grounds upon which Symyx's unfair competition claims rest and, more particularly, fails to differentiate between those allegations that relate to "actions" that were allegedly "unfair" in contrast to those that were allegedly "deceptive" or "unlawful." Amended Complaint at ¶ 68, 73. Symyx should provide a more definite statement that identifies with "**reasonable particularity**" those allegations that allegedly support its claim. *Khoury v. Maly's of California, Inc.* 14 Cal.App.4th 612, 619 (Cal. App. 1993).[14]

**3.** <u>Symyx's fraud allegations are inadequately pled</u>

Symyx concedes that it is not pursuing a claim of fraud *per se*. Opp. at 16:5, 16:9-10. Symyx does, however, seek exemplary damages for Accelergy's and the Individual Defendants' "fraud." *Id*. at 16:5-8. Symyx's contention that a Rule 9(b) pleading standard does not apply to Symyx's exemplary damages request (*id*. at 16:8) is inconsistent with this District's practices. In *Align Technology*, like here, the complaint did not allege a claim of fraud, but did seek punitive damages based on fraud. *Align Tech., Inc. v. Miller*, No. C-05-3418 MMC, 2005 WL 3445623, at *2 (N.D. Cal. Dec. 14, 2005). The Court struck the "prayer for punitive damages, to the extent based on a theory of fraud … because [plaintiff] does not allege any facts to support a finding of fraud, let alone facts with 'particularity'" as required by Rule 9(b). *Id*.

---

[14] Neither of the cases relied upon by Symyx – *CRST Van Expedited, Inc . v. Werner Enter., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) and *Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1217 (S.D. Cal. 2007) – dictate a different outcome. In *Multimedia*, the Court expressly endorsed *Khoury*'s "reasonable particularity" pleading standard. 525 F. Supp. 2d at 1218. *CRST* addressed a different issue - whether the unfair competition claim-at-issue was adequately plead to survive a Rule 12(b)(6) motion to dismiss.

But even if – as Symyx contends – Rule 8 governs, Symyx's request for punitive damages to the extent it is based on fraud is inadequately pled. In *Clark* – which is relied upon by Symyx – the Court concluded that plaintiff's prayer for punitive damages based on fraud was sufficient because "[t]he Complaint alleges that [defendant] intentionally denied Plaintiff's insurance claim despite knowledge of its coverage obligations, and that it acted with an intent to injure Plaintiff." *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1020 (S.D. Cal. 2000). By contrast, Symyx's Amended Complaint includes no allegations stating, suggesting or supporting a finding that Accelergy or the Individual Defendants intended to cause injury to Symyx or any allegations supporting a finding of fraud.

## IV.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss should be granted and Symyx's state law claims dismissed.

Dated: February 27, 2008                           WEIL, GOTSHAL & MANGES LLP

By:  */s/ Christopher J. Cox*
Christopher J. Cox
Attorneys for Defendants
ACCELERGY CORPORATION,
YOUQI WANG, PEIJUN CONG
and YUMIN LIU